**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case 22-80370 |
| Shane S. Siner, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | Judge Lynch |
| | ) | |

<u>**MEMORANDUM DECISION**</u>

Melinda Viravong (formerly Melinda Siner), the Debtor's former spouse, moves for modification of the automatic stay pursuant to 11 U.S.C. § 362 (d)(1) and (2) for the limited purpose of requesting a Qualified Domestic Relations Order from the state court. (ECF No. 110 (the "Motion")). Before the commencement of this bankruptcy case, the Illinois circuit court had awarded to the Movant a distribution of the retirement account of the Debtor in the Judgment for Dissolution of Marriage entered on February 10, 2022, in *Shane S. Siner v. Melinda Siner*, case no. 2018 D 0275 (17th Cir., Winnebago Co., Illinois). Melinda now asks to return to the state court to seek the entry and execution of a Qualified Domestic Relations order to effectuate that distribution.

For the reasons stated below, the Motion will be granted subject to the limitations set by this Court.

## I.      BACKGROUND

Debtor Shane Siner and Melinda Viravong were married on November 1, 2011. They have one child. In 2018 Shane filed a petition for dissolution of the marriage in the

Seventeenth Judicial Circuit Court (Winnebago Co.) (the "Divorce Court"). In the course of the divorce proceedings, Shane and Melinda executed a Marital Settlement Agreement (the "MSA") and, on February 10, 2022, the Divorce Court entered judgment for dissolution of the marriage, attaching and incorporating the MSA to its judgment. On April 6, 2022, Shane filed a petition for relief under chapter 13 of the Bankruptcy Code.

Melinda filed her proof of claim for $52,900. She asserted priority treatment for the entire amount of the claim as a domestic support obligation. (Claim 6-1.) Shane objected, arguing that the claim is in the nature of a property settlement and is not entitled to priority treatment. For the reasons stated in its Memorandum Opinion dated March 31, 2023, this Court determined that the monetary obligations claimed by Melinda are not in the nature of alimony, maintenance, or support, and therefore will be allowed only as a non-priority general unsecured claim. (ECF No. 54.) Notably, the parties contested then only certain unfulfilled monetary obligations under the MSA. The Court was not asked to and did not determine the effect of provisions in the MSA or judgment for dissolution dividing property rights.   Nor has the Court determined whether Shane or Melinda owned any specific property as of the petition date.

Melinda claims an ownership interest pursuant to the MSA in funds in a certain retirement account. The MSA provides, in pertinent part:

> 5. <u>Retirement Account.</u> By virtue of HUSBAND'S employment HUSBAND has an interest in a certain Retirement Account, which the parties acknowledge is marital property. WIFE shall be awarded $20,930.00 ("AGREED RETIREMENT PAYMENT") of said Retirement Account as of the date of entry of Judgment for Dissolution by means of a Qualified Domestic Relations Order to be prepared by WIFE's attorney. Should there be a deficiency in the AGREED RETIREMENT PAYMENT to WIFE, HUSBAND shall remain personally liable for any deficiency.

Relying on this provision, Melinda now moves for relief from the automatic stay to permit her to pursue her alleged property interest in the Divorce Court. In its previous ruling on the claim objection, this Court pointed out that "no issue has been raised or evidence presented as to the effectiveness of any withdrawal or transfer from the retirement account or whether Melinda has any ownership or security interest in it. Again, the court makes no determination on such issues" (ECF No. 54, 8), limiting its findings only to whether any monetary claim "asserted in her claim was intended to be a division of marital property or in the nature of alimony, maintenance, or support." (Id., 11.)

The Court confirmed Shane's chapter 13 plan on May 23, 2024. (ECF No. 94, the "Plan".) The confirmed Plan makes no specific reference to Melinda nor to any property other than his residence in Machesney Park. Under the Plan, Shane shall continue to make direct mortgage payments to the mortgagee without modification. He shall make 36 monthly payments of $200 to the Trustee, together with a portion of future tax refunds and bonuses received. Priority attorneys' fees and trustee fees will be paid first from the Debtor's monthly contributions, after which any remaining will be distributed pro rata by the Trustee towards general unsecured claims. Shane's Plan does not specify any particular unsecured creditors, but the claims registry shows six, including Melinda.[1] The terms of the model chapter 13 plan from which Shane's confirmed Plan is drawn, provide "Property of the estate" is to vest

---

[1] The mortgage bank also filed a proof of claim, but it lists its claim as fully secured with no deficiency claim. (Claim No. 2-2.)

in the debtor upon plan confirmation.[2] This Court recently granted the Debtor's unopposed motion to modify his Plan to decrease the minimum distribution to nonpriority unsecured creditors to $ 0. (ECF No. 125.)

Melinda now requests stay relief to permit her to assert her alleged ownership interest in the retirement account in the Divorce Court to obtain the Qualified Domestic Relations Order described in the MSA. (ECF No. 110, the "Motion".)  Shane objects to the Motion, raising the doctrine of laches and arguing that Melinda is now estopped from asserting an interest in the retirement account because she failed to object to his bankruptcy exemption claim and did not request a determination of ownership in the bankruptcy case. Lastly, Shane argues that Melinda has at most a dischargeable monetary claim under the MSA and not a vested property interest. (Response, ECF No. 117.)

## II.  JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the Northern District of Illinois. Motions to terminate, annul, or modify the automatic stay may only arise in a bankruptcy case, concern the administration of the bankruptcy estate and are within the Court's core jurisdiction. 28 U.S.C. § 157(b)(2)(A), (L). See *In re D/C Distribution, L.L.C.*, 617 B.R. 600, 605 (Bankr. N.D. Ill. 2020) (providing that stay relief motions are "'core' proceedings . . . in which the bankruptcy court has both statutory and constitutional authority to enter final orders").

## III.  DISCUSSION

---

[2] The Plan contains two non-standard terms: (1) it may conclude before the expiration of its 36-month term only if all allowed claims are paid in full (no early payoff) and (2) student loan payments shall be made directly outside of the Plan. (ECF No. 2, ¶8.1.)

"[D]esire to permit an action to proceed to completion in another tribunal may provide" cause to lift the automatic stay under section 362(d)(1). *In re Williams*, 144 F.3d 544, 547 (7th Cir. 1998) (quoting *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1271 (5th Cir. 1997) (quoting H.R. Rep. 95-595 at 343 (1977))). The decision whether to lift the stay to permit litigation of an issue in another jurisdiction is within the bankruptcy court's discretion, but courts generally consider whether:

a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
c) the creditor has a probability of prevailing on the merits.

*In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991).

Granting the Motion has not been shown to greatly prejudice the Debtor or estate. Indeed, it is not even clear that the stay applies to the limited steps that Melinda proposes to take,[3] namely, to return to the Divorce Court to obtain the order contemplated by the pre-petition MSA and the Judgment for Dissolution. The automatic stay does not apply to the commencement or continuation of a civil action or proceeding "for the dissolution of a marriage, *except to the extent that such proceeding seeks to determine the division of property that is property of the estate.*" 11 U.S.C. § 362(b)(2)(A)(v) (emphasis added). Thus, as the Third Circuit has explained, a post-petition divorce court order ordering a county entity to execute a deed to document transfer of property divided and awarded by the divorce

---

[3] It is not infrequent for bankruptcy courts to issue "comfort orders" that the automatic stay does not apply "because they give a party in interest, and perhaps a non-bankruptcy court, comfort that their actions will not violate the automatic stay." *In re Thompson,* No. 22-11921-RMB, 2023 WL 2466435, at *2 (Bankr. W.D. Wis. Mar. 10, 2023).

court pre-petition does "*not* 'seek[] to determine the division of property that is property of the estate'" and, therefore, does "not fall under the exception to the exception under § 362(b)(2)(A)(iv)." *In re Kipps*, 2024 WL 2874366, *3 (3rd Cir. June 7, 2024). The Motion here also does not fall within the exception to the general exception as, similar to *Kipps*, the Divorce Court determined and ordered the division of property before the Debtor filed his bankruptcy petition. Melinda seeks an order from it to enforce or effectuate that pre-petition division and, crucially, will not ask that court to determine how the property shall be divided.

Indeed, the retirement account at issue – or the portion awarded to Melinda pre-petition – likely is not "property of the estate." Under Illinois law, "[e]ach spouse has a species of common ownership in the marital property which vests at the time dissolution proceedings are commenced and continues only during the pendency of the action." 750 Ill. Comp. Stat. Ann. 5/503. When "the marital property is divided, each party's contingent interest either 'ripens into a full ownership interest' or vanishes." *Reid v. Wolf (In re Wolf)*, Nos. 23-1045, 23-1046, 23-1047, 23-1048, 2023 U.S. App. LEXIS 26813, at *6 (7th Cir. Oct. 10, 2023) (quoting *Reinbold v. Thorpe (In re Thorpe)*, 881 F.3d 536, 540 (7th Cir. 2018)). Melinda's situation is similar to that presented in a recent decision, *In re Steinke*, where the bankruptcy court, citing *Thorpe,* found that "even though the QDRO had not yet been entered when this case was filed, the Debtor's rights in the retirement funds had been fixed

by that final order." No. 21-90618, 2022 Bankr. LEXIS 1697, at *6 (Bankr. C.D. Ill. June 15, 2022).[4]

To be sure, the parties provided this Court with scant to no information about the "Retirement Account" at issue. The Court may infer from the MSA's reference to a "Qualified Domestic Relations Order" that the retirement account may be subject to the antialienation provisions of ERISA, 29 U.S.C. § 1056(d)(1), which "bar does not apply to qualified domestic relations orders (QDROs), § 1056(d)(3)." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 288 (2009).[5] If an antialienation provision prevented the ownership interest in the account funds from transferring to Melinda at the time of the dissolution judgment pre-petition, then the same antialienation provision likely prevented the funds from entering the bankruptcy estate. *See Patterson v. Shumate,* 504 U.S. 753, 760 (1992) ("The antialienation provision required for ERISA qualification and contained in the Plan . . . constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property.") Either way, the relief that Melinda seeks – to effectuate or enforce a pre-petition award of property that is not property of the estate, and not addressed in or necessary to the Debtor's chapter 13 Plan – has little effect on this bankruptcy case. Even to the extent that the automatic stay might have any technical, residual application, cause exists for the limited relief Melinda requests.

---

[4] In *Steinke*, it was the debtor who was awarded the interest in the non-debtor ex-spouse's retirement account, and the issue arose on the trustee's objection to her claim of exemption in the account. But the issue of rights and vesting under state law bears similarity.

[5] This Court makes no finding as to whether the Divorce Court's dissolution judgment, which incorporates the MSA, may qualify as a QDRO or even if any provisions of ERISA apply. Again, the parties furnished this Court with little information about the retirement account.

The MSA provides "Should there be a deficiency in the AGREED RETIREMENT PAYMENT to WIFE, HUSBAND shall remain personally liable for any deficiency." Shane argues that this sentence creates a 'contingent liability' that gives "rise to a debt which could be discharged in bankruptcy." (ECF No. 117, 10-11.) However true that may be, that is not the provision that Melinda seeks to enforce. The Motion asks only for permission to obtain a QDRO pursuant to the MSA.  Melinda does not assert any deficiency or ask to pursue a personal liability claim in the Divorce Court against Shane.

Nor does a pre-petition delinquency claim appear likely. While the record is unclear about the "Retirement Account" referenced in the MSA, Shane's bankruptcy schedules list a "401(k)" account at "JP Morgan Chase" that he valued at "$40,000" and a "401(k)" account at "Collins Aerospace" valued at "$4,000." (ECF No. 1.)  His scheduled value for the JP Morgan Chase account is almost twice the amount awarded in the MSA less than two months before. Thus, his own schedules suggest there was no pre-petition delinquency. In any event, such factual issues were not presented to this Court to adjudicate.

As an aside, the Objection questions in passing whether potential liability for a shortfall in the retirement account might constitute a pre-petition or a post-petition debt. (ECF No. 117, 7.) That question is not before the Court, however, and the Court will not speculate on a bare record. Indeed, if there is no shortfall, then the issue is purely hypothetical. In any event, granting stay relief to allow Melinda to proceed in the Divorce Court is not a mere detour on a path inevitably leading back to this Court. To the contrary, with certain exceptions not relevant here, "state courts have concurrent jurisdiction with

the bankruptcy courts to determine whether or not a debt is dischargeable in bankruptcy."
*Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 586 (7th Cir. 2005).

Finally, Shane notes that Melinda did not object to his claim of exemptions – including in the Retirement Account – or object to confirmation of the Plan that vested property of the estate in him to suggest that this request for stay relief coming near to the completion of his Plan should be barred by principles of laches or *res judicata.* (Resp. in Opp'n, ECF No. 117.) However, "[l]aches is not simply a matter of delay, and to bar an action 'it must appear that a plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant, or caused him to pursue a course different from what he would have otherwise taken.'" *Nature Conservancy v. Wilder Corp.*, 656 F.3d 646, 649 (7th Cir. 2011) (quoting *DeBruyn v. Elrod*, 84 Ill. 2d 128 (Ill. 1981)).

None of the cases Shane cites apply laches to a request for stay relief.  That is not surprising. Section 362 of the Bankruptcy Code embodies a general policy for creditors and others to refrain from taking action against the debtor or debtor's property until the bankruptcy case is closed or dismissed or the debtor obtains a discharge. 11 U.S.C. § 362(c)(2). Certainly, particular exceptions may arise, but to fault a creditor or consider it "unreasonable" for abiding the temporary injunction of the automatic stay runs at odds with this policy. Indeed, the situation presented here is not much different from that found in *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582 (7th Cir. 2005), where the debtor's ex-spouse and her divorce attorney waited until after the debtor completed his Chapter 13 plan and received a discharge before seeking a determination in the state court that the debtor's obligation to pay the fees was a nondischargeable debt under Section 523(a)(5). None of the

parties "dispute[d] the proposition that a creditor can wait until after the debtor has been discharged from bankruptcy to litigate the dischargeability of the debt owed to the creditor," and apparently neither did the Court of Appeals. 405 F.3d at 587 (citing Ginsberg & Martin on Bankruptcy ¶ 11.7[A][2]).[6]

In any event, the Debtor has not shown prejudice. Dissolution of the stay appears to be near at hand. The original term of the Plan was to run through April 2025, but its recent modification to reduce to $0 the distributions to general unsecured creditors makes it likely that the Plan will run a few more months at most.

The Debtor also takes issue with Melinda now requesting stay relief when she had not earlier objected to his claim of exemptions or the confirmation of his Plan. Exemptions, however, lie on the border between property *of the estate* and property *of the debtor,* allowing the debtor to keep property that would otherwise be property of the estate under section 541. *See, e.g., Owen v. Owen*, 500 U.S. 305, 308 (1991) ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."); *Green v. Leibowitz,* 108 F.4th 530, 532 (7th Cir. 2024) ("[N]ot all property necessarily enters the estate—Section 522 of the Bankruptcy Code allows debtors to exempt certain property and protect it from creditors' claims."). True, under section 522(c) "Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts." *Owen v. Owen*, 500 U.S. at 308. But the Supreme Court emphasized that "No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate." *Id.*

---

[6] According to *Eden's* procedural history, the creditor had sought stay relief near the end of the case, but the request was rendered moot by entry of the discharge, which terminated the stay. 405 F.3d at 584.

Page 10 of 13

Nor do exemptions convey third-party property rights to the debtor. *See, e.g., Fowler v. Shadel,* 400 F.3d 1016, 1019 (7th Cir. 2005) ("The corporate assets of Fowler Trucking, Inc. are not property of the debtor and therefore cannot become property of Fowler's bankruptcy estate. Hence, the question of an exemption does not arise."). Where the debtor holds only a partial interest in property, only that partial interest enters the estate and may be exempted. For example, "if a debtor holds only bare legal title to his house," such as where the house is fully encumbered by a mortgage, "then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder," and "since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property." *Owen v. Owen*, 500 U.S. at 308-09.

The same is true of the vesting provisions such as section 1327(b) by which confirmation of the plan vests "property *of the estate* in the debtor." By its terms it applies to "property of the estate" and does not convey third-party non-estate property interests to the debtor. A "Chapter 13 plan may not provide for disposition of property which is not property of the estate" and the "fact of plan confirmation cannot bind a property owner disposing of his property rights when such property is not within the Court's vested jurisdiction." *In re Nicholson*, 579 B.R. 640, 653 (Bankr. S.D. Ga, 2017) (quoting *Winters Nat'l Bank & Trust Co. v. Simpson*, 26 B.R. 351, 354 (Bankr. S.D. Ohio 1982)).

In an Ohio case bearing striking similarities to this, the bankruptcy court granted relief for an ex-spouse to return to the state divorce court to obtain a QDRO to obtain a share of the Debtor's retirement accounts consistent with the prepetition divorce decree. *In re Jeffers*, 572 B,R, 681 (Bankr. N.D. Ohio 2017). Highlighting the distinction between

property interests and claims, the court observed: "The divorce decree did not create a debt from the ex-husband to the ex-wife; it created a property interest in favor of the wife in the assets awarded to her by that decree." 572 B.R. at 685. It rejected the debtor's argument that the binding nature of the confirmed plan or the vesting effect of Section 1327(b) and (c) precluded the relief sought, explaining:

> The central flaw in the Debtor's reliance on this rule is that the Movant is not seeking any relief that would violate the terms of the confirmed plan. The automatic vesting provisions of 11 U.S.C. § 1327(b) and (c) vest property of the estate in the debtor, but do not define property of the estate; that remains the province of 11 U.S.C. § 541. Similarly, a chapter 13 plan cannot simply identify property that is not property of the estate, provide that such property shall vest in the debtor upon confirmation, and rely on a lack of objections to effectuate that result. Pursuant to 11 U.S.C. § 1322(b)(9), the plan may provide for vesting of property of the estate in the debtor or any other entity upon confirmation or at a later time; the reverse, however, is not the case. A proceeding to recover money or property from a third party must be by adversary proceeding. See Fed. R. Bankr. P. 7001(1). Moreover, an action to recover property, even one resolved by default, requires legal grounds supporting a judgment.

572 B.R. at 686.

Like in *Jeffers*, Shane's Plan contains no specific reference to retirement accounts or to Melinda. Nor had the Debtor commenced an adversary proceeding to determine the parties' respective interests in the accounts. *See* Fed. R. Bankr. P. 7001(b) (requiring an adversary proceeding to determine the validity, priority, or extent of a lien or other interest in property).[7] While Melinda brought no action in the bankruptcy case to seek determination of her interest in the Retirement Account, neither did the Debtor.

---

[7] While Bankruptcy Rule 4003(d) permits a motion to avoid a lien in exempt property under Section 522(f), that Rule also expressly relieves the creditor from needing to comply with the deadlines and procedures for objection to exemption to challenge the exempt nature in the context of the lien avoidance motion. *See also, e.g., In re Schoonover*, 331 F.3d 575, 578 (7th Cir. 2003) ("[L]ienholders have more time than general unsecured creditors, a dispensation essential if lienholders are to enjoy any chance to watch the proceedings from afar and enforce their liens later. Just as § 522(l) and Rule 4003(b) put the onus of timely objection on general

CONCLUSION

Accordingly, Melinda's motion for relief from stay is granted. The automatic stay is modified pursuant to 11 U.S.C. § 362(d)(l) and (2) for the limited purpose of allowing the state court to enter and execute a Qualified Domestic Relations Order effectuating the distribution of the retirement account of the Debtor, Shane Siner, that the state court awarded to the Movant in its judgment for dissolution of marriage. This relief is limited to entry, execution, and processing of the Qualified Domestic Relations Order and does not authorize any other actions.

A separate order giving effect to this ruling will be entered contemporaneously.

DATE:  March 20, 2026

ENTER:

_____
Thomas M. Lynch
United States Bankruptcy Judge

---

unsecured creditors, so § 522(f) and Rules 4003(d) and 9014 put the onus of contesting a lien on debtors; the clock for lienholders runs from the motion under § 522(f) and not from the meeting of unsecured creditors."). In any event, no such motion has been brought, and Melinda asserts an ownership interest, not a lien.